**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salah Dean Wahab,<br><br>　　　　Plaintiff,<br><br>v.<br><br>J & S Operating Corporation, *et al.*,<br><br>　　　　Defendants. | No. CV-24-00417-PHX-JJT<br><br>**ORDER** |

At issue is Defendant J&S Operating Corporation's (J&S) Motion to Join Andrew Abdul-Wahab (referred to by the parties and therefore also the Court as Meyers) as a third-party defendant (Doc. 51, Motion). Plaintiff Salah Dean Wahab filed a Response in opposition (Doc. 54, Response), and J&S filed a Reply (Doc. 56, Reply). Defendants John and Summer Lynch have joined J&S's Motion in full (Doc. 55).[1] The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.     Background**

The facts of this case are in dispute. The Court summarizes those facts only insofar as is necessary to address the instant Motion. On July 3, 2022, Plaintiff sustained serious injuries in an accident that occurred on the Arizona side of the Colorado River, in La Paz County. Plaintiff, who was a minor at the time of the incident, had been patronizing a

---

[1] Plaintiff named Summer Lynch as a defendant to reach the marital estate of John Lynch. (*See* Doc. 25 ¶ 3.) As Summer Lynch is not alleged to have committed any acts or omissions relevant to Plaintiff's claims, the Court will refer exclusively to John Lynch. Moreover, as Lynch is in "complete agreement" with J&S's Motion, the Court will refer to Defendants collectively unless there exists a reason to distinguish between them. (*See* Doc. 55 at 1.)

riverside restaurant with several of his friends and family, some of whom were adults and some of whom were minors. The restaurant was owned by J&S, and it included on its premises a dock that extended into the river. Plaintiff and some friends were engaged in a game whereby they would jump off the dock and then attempt to swim for as long as they could on a single breath. Lynch and his family were patronizing the same restaurant, to which they had commuted in a boat that Lynch had parked near the restaurant's dock. At the conclusion of his visit to the restaurant, Lynch boarded his boat with his family, placed the boat in reverse, engaged the boat's propeller, and proceeded to back the boat into the river. The boat's propeller made contact with Plaintiff and inflicted severe injuries upon him.

Plaintiff brought suit against J&S on a theory of premises liability and against Lynch on a theory of negligence. (Doc. 25 at 5–8.) Resolution of these claims involves numerous questions of fact that remain outstanding, but the Court need not resolve such questions here. The instant Motion asserts that nonparty Meyers is liable to Defendants for some or all of the liability that Defendants bear to Plaintiff. It is uncontested for purposes of this Motion that Meyers was responsible for Plaintiff's supervision at the time of the accident. Defendants assert that Meyers was wholly or partially derelict in discharging his supervisory duties and thereby incurred liability to Defendants. The proposed third-party complaint submitted by Defendants includes two claims against Meyers: (1) negligence and (2) common-law indemnity and contribution. (Motion at 9.)

Defendants seek leave to implead a third-party defendant under Federal Rule of Civil Procedure 14. (Motion at 3.) Plaintiff opposes the Motion on the grounds that it is dilatory and prejudicial and that it constitutes an attempt to circumvent Arizona's rules governing the allocation of liability to nonparties at fault. (Response at 3–6.) Plaintiff also submits an argument that the Court should conduct a "preliminary screening" and thereby reject Defendant's third-party complaint as "obviously unmeritorious." (Response at 3–6.) Confusingly, this argument relies exclusively on citations to caselaw from outside the Ninth Circuit. (Response at 3–6 (citing cases from the Third Circuit, the District of New

Jersey, the Middle District of Pennsylvania, the Eastern District of Pennsylvania, and the District of D.C.).)

## II. Legal Standard

Federal Rule of Civil Procedure 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Where, as here, more than fourteen days have passed since serving its answer, a defendant must obtain leave of court to file the third-party complaint. The decision is then "entrusted to the sound discretion of the trial court." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983).

It is not enough that the third-party claim relates to or arises from the same transaction or set of facts as the original claim. *Id*. The third-party claim "may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative." *Id.*; *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." (citation omitted)).

Relying on law from the Third Circuit, Plaintiff asserts that the Court ought to preliminarily screen the proposed third-party complaint in order to weed out claims that are obviously unmeritorious. Unlike its sister courts, the Ninth Circuit Court of Appeals has not addressed the standard by which a district court should adjudge the merits of a proposed third-party complaint. Nevertheless, several district courts in this Circuit have adopted a modified form of the proposition urged by Plaintiff. In a seminal order, the Northern District of California held that one of the factors that courts ought to consider in determining whether to permit a third-party complaint under Rule 14 is whether the "third-party complaint allege[s] a cause of action for which relief may be granted." *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057–58 (N.D. Cal. 2000). "This is an important factor in this Court's decision whether to permit impleader. It makes no sense to permit such a potentially prejudicial expansion of the case at the expense of Plaintiffs, if the third-party

plaintiffs do not have a valid theory of relief against the third-party defendants." *Id.* Other districts in this Circuit have since adopted the holding from *Irwin*. *See e.g.*, *Helferich Pat. Licensing, LLC v. Legacy Partners, LLC*, 917 F. Supp. 2d 985, 988–89 (D. Ariz. 2013); *Stephens v. Comenity, LLC*, 287 F. Supp. 3d 1091, 1094–95 (D. Nev. 2017); *Grano v. Sodexo Mgmt., Inc.*, No. 3:18-CV-01818-GPC-BLM, 2020 WL 2111898, at *5 (S.D. Cal. May 4, 2020); *Jones v. City of Riverside*, No. 5:22-CV-01764-SSS-SPx, 2023 WL 9319289, at *2 (C.D. Cal. June 12, 2023); *Hogan v. United States*, No. 3:23-CV-00765-AB, 2024 WL 4471680, at *3 (D. Or. Oct. 9, 2024).

However, although the *prima facie* validity of a proposed third-party complaint is an important factor in the analysis of whether to permit such a filing, it remains simply one factor among many. "In determining whether to grant leave to implead, courts consider the following factors: (1) timeliness of the motion and/or whether the movant was dilatory in filing it; (2) prejudice to the original plaintiff; (3) complication of issues in the case; (4) likelihood of trial delay; and (5) whether the proposed third-party complaint alleges a cause of action for which relief may be granted." *Theut v. Aramark Corp.*, No. CV-18-02593-PHX-JJT, 2020 WL 3962231, at *2 (D. Ariz. July 13, 2020) (citing *Helferich Pat. Licensing*, 917 F. Supp. 2d at 988). Therefore, the Court will not employ a preliminary screen in the strict sense of that phrase, as urged by Plaintiff, but will instead consider the *prima facie* validity of Defendants' proposed third-party complaint as one factor in the relevant analysis, as is consistent with the law of this Circuit.

Moreover, although a clearly deficient third-party complaint should be rejected, the Court must bear in mind that "[t]he purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). For that reason, district courts in this district routinely hold that Rule 14 must be "construed liberally in favor of allowing impleader." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, No. CV 10-00290 DAE-

1. SPL, 2013 WL 12173033, at *3 (D. Ariz. Feb. 14, 2013) (citing *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 393 (1st Cir. 1999)); *see also AE v. Portillo*, No. 1:09CV2204 LJO DLB, 2011 WL 2516205, at *3 (E.D. Cal. June 21, 2011); *Trailers Intl LLC v. Mastercraft Tools Fla., Inc.*, No. 3:15-CV-00171-MO, 2017 WL 11510076, at *2 (D. Or. July 7, 2017); *May v. Allstate Ins. Co.*, No. 3:18-CV-2632-CAB-(AGS), 2019 WL 626103, at *1 (S.D. Cal. Feb. 14, 2019); *Tahler v. Apartment Mgmt. Consultants LLC*, No. 2:23-CV-10539-RGK-RAO, 2024 WL 3301189, at *1 (C.D. Cal. June 11, 2024).

## III. Discussion

As noted, the Court will consider the following five factors: (1) timeliness of the motion and/or whether the movant was dilatory in filing it; (2) prejudice to the original plaintiff; (3) complication of issues in the case; (4) likelihood of trial delay; and (5) whether the proposed third-party complaint alleges a cause of action for which relief may be granted.

### A. Timeliness and/or Dilatoriness of the Motion

The deadline to join additional parties set by the Court's Scheduling Order was November 29, 2024. (Doc. 22 at 2.) Defendants filed the joinder Motion on November 27, 2024. Therefore, the motion was timely. Plaintiff argues that Defendants were nevertheless dilatory in seeking to join an additional party because they have known since 2022 that Plaintiff was a minor who had patronized the restaurant in the company of his adult companions, including Meyers. Defendants counter that they did not know that Meyers was acting as Plaintiff's supervisor until Plaintiff disclosed that fact in a deposition conducted on November 1, 2024. (*See* Reply at 3; Motion Ex. B.) The Court finds Defendants' contention plausible. Although it may be true, as Plaintiff suggests, that Defendants have known for years that "Plaintiff was at the establishment in question without his parents and in the company of other family and friends, including Plaintiff's adult cousin [Meyers]," (Response at 2), there is no indication that Defendants had any reason to know that Meyers in particular was responsible for Plaintiff's supervision. For instance, Plaintiff's football coach was also present on the premises at the time of the

incident, but Defendants assert that Meyers was the adult on the scene who had specifically undertaken Plaintiff's supervision. (Motion at 3–4.) Defendants base this assertion on Plaintiff's deposition testimony that Meyers had instructed him prior to the accident that "when you guys are on the dock and you guys are going to jump off, make sure you, if you see a boat coming in, you talk to the guy or the girl driving the boat and make sure you've completely communicated." (*See* Motion Ex. B at 62.) The Court expresses no position on whether Plaintiff was actually under the care and supervision of Meyers, but the Court does find that such a conclusion could plausibly be drawn from Plaintiff's deposition testimony. As Plaintiff has presented no information indicating that Defendants knew or should have known about Meyers's alleged supervisory status prior to Plaintiff's deposition, the Court concludes that the instant Motion is not dilatory. This factor does not weigh against granting the Motion.

### B. Prejudice to Plaintiff

Plaintiff argues that the addition of Meyers as a third-party defendant will result in prejudicial delay because "the discovery of this case will essentially start over and the current case management deadlines will be impossible because the new defendant will have due process rights to answer, file motions, conduct discovery and adequately defend his interests." (Response at 3.) Defendants rebut this contention with the rather conclusory statement that the case management plan will not be frustrated. It is impossible to determine at this juncture the extent to which the case management plan would be disrupted by the addition of Meyers as a third-party defendant. On the one hand, fact discovery has already closed, so some amount of delay would unquestionably result from granting the Motion. (*See* Doc. 22 at 5.) On the other hand, the dispositive motion deadline is not until June 27, 2025. (Doc. 22 at 5.) It is therefore possible that the delay resulting from impleader would be minimal. Furthermore, even in the event that granting the Motion extends this case by "some weeks or months," such delay does not constitute undue prejudice, as a delay of that duration "is almost certainly the result of granting any Rule 14 or Rule 15 motion." *Theut*, 2020 WL 3962231, at *3. Nevertheless, because there remains a possibility that permitting

1 impleader could result in substantial discovery delay, the Court concludes that this factor weighs moderately against granting the Motion. *See Helferich Pat. Licensing*, 917 F. Supp. 2d at 989 (holding that prejudice occurs in combination with discovery delay, even in a case such as this where the court forbore setting a trial date).

### C. Complication of Issues

Although the proposed third-party complaint introduces new claims levied against a new party, the claims are not especially complex. Both claims proceed from the straightforward proposition that Meyers failed to adequately supervise Plaintiff. Plaintiff argues that these claims are obviously unmeritorious, (Response at 3), but he does not seriously contend that the proposed third-party claims are so complex as to independently militate against joinder. This factor therefore does not weigh against granting the Motion.

### D. Likelihood of Trial Delay

The Court has not yet scheduled a trial for this matter. As noted above, there is a possibility that the joinder of Meyers as a third-party defendant could result in substantial frustration of the discovery timeline, and such possibility militates against granting the Motion. But it would be nonsensical to attach double significance to that potential delay by weighing it twice. Therefore, the Court concludes that this factor does not favor denial of the Motion.

### E. *Prima Facie* Merits of the Proposed Third-Party Complaint

The primary basis upon which Plaintiff contests the joinder of Meyers as a third-party defendant is the contention that the claims against him are legally defective. (Response at 3–6.) As noted, the proposed third-party complaint asserts two claims against Meyers: (1) negligence and (2) common-law indemnity and contribution. The Court addresses each in turn.

#### 1. Negligence

Under Arizona law, the first element of a negligence claim is the existence of a legal duty. *Cal-Am Properties Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81 ¶ 5 (2022). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an

action for negligence cannot be maintained." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 11 (2007). The fact that a defendant's conduct creates a foreseeable risk of harm to a plaintiff does not give rise to a legal duty. *Id.* at 144 ¶ 15. Indeed, foreseeability is not even "a factor to be considered by courts when making determinations of duty." *Id.* "In Arizona, duties are based on either special relationships or on public policy." *Cal-Am Properties Inc.*, 253 Ariz. at 81 ¶ 9. Here, Defendants assert that Meyers owed Defendants, and therefore presumably the entire world, a duty to supervise Plaintiff so as to prevent Plaintiff from engaging in conduct that might render Plaintiff vulnerable to the negligent actions of Defendants such that Plaintiff might sustain injuries, as such injuries could result in downstream harm to Defendants in the form of financial liability to Plaintiff. As far as the Court is aware, no such duty exists in Arizona.

"The plaintiff bears the burden to establish that a duty exists." *Avitia v. Crisis Preparation & Recovery Inc.*, 256 Ariz. 198, 782 ¶ 26 (2023). That means that Defendants, as third-party plaintiffs under their proposed third-party complaint, bear the burden of establishing that Meyers owed them a duty to supervise Plaintiff such that Plaintiff would not become injured. Defendants cite Section 316 of the Restatement (Second) of Torts, which provides that:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>  (a) knows or has reason to know that he has the ability to control his child, and
>  (b) knows or should know of the necessity and opportunity for exercising such control.

(Reply at 4.) This provision of the Restatement plainly does not apply to the circumstances presented here. Even if Meyers may be deemed a "parent" for purposes of the duty analysis, Section 316 states that he has a duty to prevent his minor child "from so conducting itself as to create an unreasonable risk of bodily harm to them." The word "them" is clearly a reference to the antecedent word "others," meaning that a parent owes bystanders a duty to prevent his child from physically harming the bystanders. A parent does not owe

bystanders a duty to prevent the child from harming itself. Even if the Court were to accept the proposition that it was foreseeable that Meyers's allegedly negligent supervision would permit Plaintiff to engage in conduct that, when combined with Defendants' own alleged negligence, would lead to an accident in which Defendants would then owe Plaintiff compensatory damages, which is itself a rather dubious proposition, there still would be no duty owed on these facts, as foreseeability no longer bears upon the determination of whether a defendant owes a plaintiff a legal duty in Arizona.

The only other source of law Defendants provide in order to establish the existence of a duty is a citation to *Parsons v. Smithey*, 109 Ariz. 49 (1973). (Reply at 4–5.) But, as with Section 316 of the Restatement, that case involved bodily harm inflicted by a minor upon a third party. *Parsons*, 109 Ariz. at 50. It is therefore inapposite to the present case. Because neither of the authorities cited by Defendants establish the existence of a supervisory legal duty owed by Meyers to Defendants, the proposed third-party complaint's negligence claim fails as a matter of law.

Contrary to Defendants' assertion, Plaintiff's counsel is not precluded from directing the Court's attention to the failure of Defendants' proposed negligence claim. Plaintiff argues that Defendants' claim is, if anything, a potential source of liability flowing directly from Meyers to Plaintiff, not a source of derivative liability flowing from Meyers to Defendants. Citing to no authority, Defendants contend that "[a]s counsel for Plaintiff, and the fact that Meyers could be found liable for causing Plaintiff's injuries and subsequent damages, Plaintiff's counsel is conflicted from arguing against this Motion." (Reply at 3.) This contention is unavailing. First, Plaintiff's counsel is not arguing that Meyers is not liable to Plaintiff. Rather, counsel is arguing that, irrespective of whether Meyers might bear some liability to Plaintiff, Meyers owed no duty to Defendants and therefore cannot be a proper third-party defendant under Rule 14 on a negligence cause of action. The Court perceives no conflict of interest inherent in that argument. Second, Meyers is Plaintiff's cousin. It may well be the case that Plaintiff does not wish to subject Meyers to liability. Were counsel to abide by such a desire, counsel would not be in breach

1  of any attorney-client duty. Defendant's assertion that counsel's opposition to the Motion
2  conflicts with an attorney-client duty is based on speculation as to the contours of counsel's
3  representation of Plaintiff.

### 2. Common-Law Indemnity and Contribution

Plaintiff argues that the third-party complaint's second claim also fails as a matter of law. According to Plaintiff, "J&S has not provided any legal basis for this obviously unmeritorious allegation, which appears to be an unusual attempt to circumvent the fact that Arizona has abolished join several liability pursuant [sic] and has set forth the proper method for apportioning damages amongst parties and non-parties pursuant to A.R.S. § 12-2506 based upon comparative fault, not indemnity nor joint and several liability." (Response at 5–6.) Plaintiff devotes an entire page of his Response to this argument, citing three Arizona cases and four sections of the first and third Restatements of Restitution. (Response at 6.) Defendants, despite collectively filing two briefs following Plaintiff's Response, do not even address Plaintiff's argument.

A court may consider an argument conceded when a party fails to counter it. *Brown v. Sperber-Porter*, No. CV-16-02801-PHX-SRB, 2017 WL 10410091, at *4 (D. Ariz. Dec. 20, 2017). Defendants' failure to rebut or even mention Plaintiff's position constitutes a constructive concession. As noted, the alleged legal meritlessness of the proposed third-party complaint is Plaintiff's primary argument. The assertion that Defendants' claim for common-law indemnity fails as a matter of law is not an ancillary thread of Plaintiff's Response. It is the core contention. Moreover, Plaintiff's legal argument appears to hold water. The Arizona Court of Appeals has written that "although Arizona courts have recognized various forms of common-law indemnity, each is subject to the limiting principle that one seeking a common law right to indemnity must be proven free from negligence in order to make any claim to indemnity." *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 241 ¶ 19 (Ct. App. 2006). As a third-party claim brought under Rule 14 is necessarily a derivative claim, Defendants' claim for common-law indemnity presupposes that Defendants are found to have been negligent, in which case

their claim for common-law indemnity would fail as a matter of law. The foregoing proposition may not be complete or accurate, but it is facially sound. The Court declines to conduct gratuitous legal research on Defendants' behalf. Defendants have conceded the legal invalidity of their proposed third-party claim for common-law indemnity and contribution.

As both of the proposed third-party complaint's claims fail as a matter of law, the pleading is not one that "alleges a cause of action for which relief may be granted." *See Helferich Pat. Licensing*, 917 F. Supp. 2d at 988. This factor therefore weighs strongly against granting the Motion.

## IV. Conclusion

The proposed joinder in this case would be timely, non-dilatory, minimally prejudicial, non-complicating, and would not result in trial delay. Nevertheless, because the Motion for joinder is predicated upon a third-party complaint that fails to state a viable claim, the Court concludes that joinder is inappropriate. Even a minimal extension of discovery is unwarranted where, as here, the basis of such an extension is a facially meritless pleading.

Both Plaintiff and Defendants recognize that the instant Motion could have been, and perhaps should have been, a notice of nonparty at fault. Plaintiff asserts repeatedly that the Motion is simply an attempt to circumvent the timeline imposed by Arizona's rules governing the allocation of fault to nonparties. (Response at 3, 5.) Although Defendants maintain that their Motion is proper, they both state that they will seek leave to file a notice of nonparty at fault in the event that the Motion is denied. (Doc. 55 at 2; Reply at 2.) Indeed, Defendants' Reply brief essentially asks the Court to recast the Motion for joinder as a motion for leave to file a notice of nonparty at fault. (Reply at 2 (arguing that "good cause exists to extend the 150-day deadline" and that "this Court should . . . properly allow the trier of fact to allocate proper percentages of fault to Meyers and any other responsible parties").)

. . .

1    "Negligence or fault of a nonparty may be considered . . . if the defending party
2  gives notice before trial, in accordance with requirements established by court rule, that a
3  nonparty was wholly or partially at fault." Ariz. Rev. Stat. § 12-2506(B). A defendant who
4  wishes to apportion liability to a nonparty must serve a notice of nonparty at fault within
5  150 days of filing its answer. Ariz. R. Civ. P. 26(b)(5). The state rule permits a late filing
6  where a defendant files a "motion showing good cause, reasonable diligence, and lack of
7  unfair prejudice to all other parties." *See id.*

8    Under the *Erie* doctrine, federal courts in the district of Arizona apply the Arizona
9  rule governing the manner by which litigants apportion fault to nonparties, despite the
10 rule's nominally "procedural" character. *Wester v. Crown Controls Corp.*, 974 F. Supp.
11 1284, 1288 (D. Ariz. 1996). Therefore, pursuant to Arizona Rule of Civil Procedure
12 26(b)(5), the Court will permit Defendants to file a notice of nonparty at fault with respect
13 to Meyers upon a showing of good cause, reasonable diligence, and lack of unfair
14 prejudice. J&S filed the instant Motion on November 27, 2024, which is 166 days after
15 J&S filed its operative answer and 168 days after Lynch filed his operative answer.
16 (Motion; Doc. 27; Doc. 28.) Although denominated as a joinder motion and not a notice of
17 nonparty at fault, the Motion contains substantially all of the information required in such
18 a notice, including the identity of the allegedly blameworthy nonparty and the facts
19 supporting the allegation of fault. For the reasons already discussed in the analysis of
20 timeliness and dilatoriness, the Court finds that Defendants acted with reasonable diligence
21 and that good cause exists to construe the Motion as an operative notice of nonparty at
22 fault, despite the fact that it fell slightly outside the 150-day filing window. Similarly, for
23 the reasons already discussed in the analysis of prejudice, the Court also finds that
24 construing the Motion as a notice of nonparty at fault will not result in "unfair prejudice"
25 to Plaintiff. Therefore, the Court will construe the Motion as a notice of nonparty at fault
26 that is timely under the exception contained in Arizona Rule of Civil Procedure 26(b)(5).
27 Defendants shall nevertheless serve and file a formal notice of nonparty at fault in full
28 compliance with Arizona law. Such notice shall be limited to Meyers. This Order is not to

be interpreted as a blanket permission to indiscriminately deviate from the 150-day filing deadline established in Arizona Rule of Civil Procedure 26(b)(5).

**IT IS THEREFORE ORDERED** denying J&S's Motion to Join Additional Defendant Via Third-Party Complaint (Doc. 51).

**IT IS FURTHER ORDERED** that Defendants shall file a notice of nonparty at fault as described herein within fourteen (14) days of the date of this Order.

Dated this 10th day of January, 2025.

Honorable John J. Tuchi
United States District Judge